Good morning, your honors. I'd like to reserve three minutes for rebuttal. Mike Subit, I represent Dr. Norman Lewis. 40 years ago, in the Peacock cases, this court held that a tenured faculty member who also has an unpaid administrative position from which he could be removed only for cause is entitled to a post-deprivation hearing. Counsel, Peacock doesn't really hold that, I don't think. It was assumed in Peacock 1. Peacock 2 simply takes the assumption and works from there. I disagree, your honor. What the Peacock 1 assumed was that that particular professor had a for-cause contract. What they then held is, assuming you have a for-cause contract, you do have a property right in that. So the only issue that they assumed was the cause. Do you have a for-cause contract here? You do have a for-cause contract here. And the contract is the faculty manual, which is expressly incorporated. That has nothing to do with tenure. It has nothing to do with somebody occupying an administrative position. The manual's pretty clear on that. I respectfully disagree, your honor. In fact, the faculty manual specifically says its purpose is to enumerate the violations of law and policy for which faculty may be disciplined. And it applies to tenured and non-tenured faculty. And it applies by its terms to all members of the university community. That's very, very broad. I agree, your honor. It's very, very broad. You're going to have to show me where that. I'm happy to, your honor. Look at, there's two different sections. There's the tenure section, which is section 3. And then, but this is not section 3. This is section 2. And if you look to our excerpts of record, it's on page 32. And it's disciplinary procedures. And it says, the purpose of these principles are for the benefit of all who are involved with or affected by the rules and regulations. That's the process that you're due. You have to show the right first before you got the process. So where's the right? The right is that the right is, and it's on page 34, the right is not to be subject to discipline except for something falling into the 20 categories on pages 34 and 35. This is not a procedural right. In fact, the Hewlin case from the 10th Circuit dealt with even a more general faculty handbook. I'm sorry, on page 34, which paragraph are you referring to? Faculty conduct subject to university discipline. The conduct for which members are subject to discipline falls into the following categories. And there's 20 of them. So unless that they, it is a substantive right to be free from discipline other than one of those 20 categories, which means it removes the administration's ability to discipline someone at will or for whim, that under this circuit's precedence in every. You still haven't got the point. This is all the process that is due. And in order to attach, to find process that counts, you keep shaking your head before I finish my statement. If you want to just disagree, I'll just stop. Apologize. OK. These are procedures. And in order to get due process, you have to show life, liberty, or property. Agreed. And you're going to have to show that has to come out of the faculty manual. It can come out of a separate contract. It can come out of a statute. A state law. Right. And the faculty manual here, the 10th Circuit dealt with exactly this question in Hewlin. The faculty manual said that a faculty member had a right to be free from arbitrary and capricious decision making. And the 10th Circuit said that that was substantive, not procedural, because it meant that they couldn't make decisions based on whim or at will. This is a lot stronger than the faculty manual. It says that other than for these 20 reasons, you cannot be disciplined. It's no different than a for cause contract. This is a for cause contract. It says you cannot be disciplined unless it falls into one of these 20 reasons. This would be, in Washington, a claim for a promise of specific treatment in specific situations. Right, but it just seems that this is probably a regular issue that comes up in universities from the standpoint whether they decide to take grants or things along those lines. And that's made at the administration level. And a lot of times, grants have conditions. And what you're trying to say is, it would seem to me then that Mr. Lewis, that he gets to enter into it. He gets to decide which grants they're going to take. He gets to decide. And as far as I can tell, that's all up to the university. No, we're not saying that. And they could say no and say, I don't want to take that grant. And Mr. Lewis could really want them to take that grant and say it would be perfect for me. Of course, Your Honor, and that's not this case. What we're saying is just like, for example, in every due process case, Matthews versus Eldridge. Congress could have declined to offer the welfare benefits. But once you give it, and the person didn't have to apply for them. But once you have them, you have a property right in them if they can only be removed for cause. And here, the faculty manual is explicit. It says that the university cannot remove any responsibility except for cause. And so the first question is, can they remove this at whim or at will? And the faculty manual says they can't. They said it's only for these 20 reasons. Which as I said, it is not procedural. It is a substantive requirement. So essentially, if we were to accept what you're saying, then the university has to risk, because the condition of this was that certain people had to approve of who was the director. And your client wasn't doing what they wanted in terms of whether it was hardwood, softwood, or anything along those lines. So they risk losing the entire grant and the money. And so you're saying that your client suddenly, you know, his relationship with the university is that he's a tenured professor and he has a right to get paid and all that goes with being tenured. Where does that say you have a right to work on certain grants? His relationship with the university was also project director for the university for this grant. He performed that role. Nobody wanted to remove it other than the university. This would be perhaps, this is not a case where anyone from the government decided they didn't want him. The president decided that he didn't want him to continue to serve. That's the university. The faculty manual is a restriction on the actions of the university. The fact that it's a grant is neither here nor there. It's simply an important administrative position, no different than the Peacock case. It's an administrative position that's, in fact, more important than the Peacock case. At the start of this argument, Judge, when you referenced the Peacock case, Peacock 1, you characterized it as a holding. Yes. And, you know, I just really, I failed to see the language in that opinion that substantiates that, your position. In Peacock 1 or Peacock 2? Peacock 1. Peacock 1, the holding is assuming, they assumed, and they thought the district court may have been wrong about this, that they assumed, took it as a given, not clearly erroneous, that he had a cause right. Then they said he was entitled to a post-deprivation hearing, which this court in Peacock 2 then said. It's all based upon the assumption. There's no grappling with the underlying right that's at stake. Okay. I mean, it's not the strongest case. Well, Peacock 1, if you're asking me does Peacock 1 dispose of whether this particularly faculty manual create an at-will or a for-cause relationship, of course not. Peacock deals with the second question, which assuming it does create a for-cause relationship, then is that right sufficient to implicate the due process clause? And the answer to that is yes. And that is that he had a contract that said he would be the department head. That's different from just granting him tenure. And he had a one-year appointment as department head from which he was removed before the expiration of the year. That is certainly true, Your Honor, but it's been the case since Perry versus Sinderman in 1972 that faculty manuals can create promises that are property rights. The promise that the Supreme Court found sufficient in Perry versus Sinderman in 1972 is less specific than here. So, Your Honor, this is, I mean, Peacock does involve a contract, but the Supreme Court had held since 1972 a faculty manual can create a property right. Faculty manual says that department chairs, school directors, deans, directors, and other administrative officers do not acquire tenure in administrative positions, meaning they do not have a right against removal and subject to these provisions. And tenure is, and this Court made very clear in LeBlanc's case just last summer that there's two aspects to it, that tenure is one way, contractual entitlement is another. Okay. And there's two different things. And we're not arguing tenure, we're arguing contractual entitlement. So where's the contractual entitlement? The contractual entitlement is the language that says you cannot have any responsibility removed except for these 20 enumerated. That's page 34. Page 34 and 35. And the other is, but the tenure provisions say that you don't have tenure. You don't have. And we're not claiming tenure. We are not claiming tenure. We are claiming a, tenure, you don't have, the tenure is only one means to have a property right. It's not, LeBlanc's case makes it clear there are two pipelines. The tenure pipeline or the contract for cause pipeline. They are separate and distinct, and this Court specifically held that in LeBlanc's. I thought this manual was all designed to implement the tenure. Incorrect, Your Honor. Article 3 is tenure. Article 2 is discipline. They're totally separate. They're totally separate articles. Right. But the discipline only attaches if you've got a life, liberty, or property interest, which has got to be created someplace else other than in the procedures. And again, Your Honor, I guess I'm, I guess the Tenth Circuit, it is not a procedure to say that you can only be removed for cause. That is not procedure. That is the definition of a property right. You can only be removed for something in particular. Can they take away his parking space? No. If they need to reallocate that, does he have to have a, do you have to have a procedure for that? Well, if you're, the question of what they, what they can't take away is also defined by the faculty manual, and they define that in terms of what a suspension is. And a suspension is any one of or combination of the following measures. Temporary release from a reduction from assigners, by all of these, reduction or suspension of pay, denial of proponement of professional promotion with the university, or professional leave within the university. It's very clear those have nothing to do with tenure. That's page 36. It is very clear that the disciplinary process, it makes no sense. I mean, think about an employment setting. I mean, the right to be free from arbitrary discipline has nothing to do with your tenure rights. And page 36, the faculty manual makes this abundantly clear. None of those things, professional leave, suspensions or denial of postponement of anything like that, temporary release from assigned responsibilities, reduction in an assignment, those have nothing to do with tenure, which proves that this, the point is, this faculty manual is about discipline. This, this article, article three is tenure. It has nothing to do with this case. Your, your tenure, your time's running down. I, I do have a few other questions for you. So, one of the other issues here is that you've named these two individuals, and both are individual and official capacities. And it, in, in their official capacities, they don't, you don't have Eleventh Amendment. They're, they're immune under the Eleventh Amendment. This is not, only for, we're only, the official capacity is only for order of, right, we're not. Okay, so, you're also seeking, you started out by seeking injunctive and declaratory relief. We're seeking, in the official capacity, we're seeking that they hold the hearing. That is the injunctive relief. My understanding, though, is that you have now taken the position that he doesn't want to be restored to his position as manager. No, what I'm saying is that's, that's putting, that's jumping ahead of ourselves. Well, well, I, well, I under, but I just, I'm curious, because. He does want to be restored to his position, but that can only be, that, that. He does or does not? He does, he does want to be restored, but he's not asking the court to do that at this point. What he's asking the court to do is hold the hearing. All right, why isn't that just intended, you know, just because you're asking for injunctive relief, that does not automatically mean that you're entitled to, to get around Eleventh Immunity. Well, I think. Eleventh Amendment immunity. That's, that's true, Your Honor. The question is whether it's to remedy an ongoing wrong. And the denial of the hearing is an ongoing wrong. This Court has held that in several cases. I mean, if this, if the Eleventh Amendment were, were, were correct here, then no time could you ever get a hearing against the State that did deny you due process. The argument that, that he's deprived, he's been deprived of this position as an administrator or a manager of this grant, and it's a continuing violation? The denial of the hearing is the continuing violation. Well, it's not that it's, what you're seeking to do is to restore him to the position, right? So he's out of that position, not having had a hearing. We are not asking the court at this point. No, I'm not, I'm not saying I'm going to, we're going to restore him. I'm just asking, to give your claim. Listen, listen to what we want to say. Just listen, okay? I know you're very committed to this case and your client and you're very concerned. But you, you, you cut off Judge Bayou before and I don't appreciate. Listen to what, there are serious questions here. You need to get over. I'm going to be really blunt with you. One of them is sovereign immunity. The other one is qualified immunity. Even if you get over sovereign immunity, you've got serious questions about qualified immunity. Whether a reasonable official at the university would have understood that he was entitled to a pre-dep, to a deprivation hearing. And I think that you've. So, my first question had to deal with sovereign immunity. And I want to know why just giving him a hearing, now, isn't nothing more than a retrospective form of relief. And it's for the reason this court has said in the Doe case and the other circuits had said, is that giving someone, is that the denial of the post-deprivation hearing is an ongoing violation. And that simply all they're asking to be, to do is to have the hearing so that, that that gets remedied. It is not a retrospective. So, is your claim for a, for a hearing, it's not based on a liberty interest, is that correct? Correct. It's based on a property right interest. Correct. So, you're, you're not seeking just to, to clear his name. You're, he has a right to a hearing before they can take this action. After. We're only seeking a post-deprivation hearing. And that's it. That's it. Okay. So, why now, let's assume you can get over sovereign immunity. Why are, aren't these officials entitled to qualified immunity? The law has to be clear, you know, there's two parts to qualified immunity. The law has to be clearly established. The right that's at stake has to be clearly established. So, why would this, these officials, why wouldn't, you know, the president who removed him, what law was there that would have alerted him that by taking this action, he was violating Mr. Lewis, Professor Lewis's procedural rights? I think both Peacock cases and going back to Perry versus Sinderman. Well, are you at all deterred by the fact that we're not reading Peacock if it's exactly the same that you're reading it? Well, obviously, it's this court's reading of Peacock that matters. Maybe it's not so clearly established. Well, if this, I think if you look at every other case that in fact this, there is not a case that says otherwise. Every court that has actually dealt with this has said that a person does have a fact, has a property right in an administrative position, even a federal grant position from which they could not be removed other than for cause. There's actually, there's not a single case that holds otherwise. All the cases cited by the university are cases where there was no property right. Just so that we understand, what is your best case that this is clearly established? A combination of Peacock and Perry versus Sinderman. Perry versus Sinderman says a faculty manual can create a property right if it shows that something can be removed other than for cause. I think Perry, the Peacock case with respect to whether or not an administrative position qualifies at that level, which is the second question, that is clearly established. The fact whether a faculty handbook can create a property right if it promises something other than at will, that goes back to Perry versus Sinderman. Thank you, Your Honor. Thank you. Good morning. May it please the court, counsel, my name is Tom Sand. I represent Washington State University, President Floyd and Provost Bailey. We ask that the court affirm the district court's decision on three grounds, sovereign immunity, qualified immunity, and that there is no property right. Any one of those grounds independently would justify affirmance of the district court. Now, you're saying there's no property right here, and you rely in part on cases holding that faculty transfers and reassignments do not implicate property interests. Aren't those cases really distinguishable? It seems to me that there's a big difference between a professor having his class schedule changed and Lewis losing a position in charge of a $40 million grant program. Yes, Your Honor, but the weightiness of the issue alone is not determinative, and I would argue that if Dr. Lewis's argument about the faculty manual discipline, if we were to engraft the process of the disciplinary procedures into creating a substantive right any time administrative duties were reduced, we would face a hearing on each of those types of situations that you're referring to. Well, let's, let me just take Judge Cowen's question a little bit from a different angle. So, he has a property interest in his position as a tenured faculty member, correct? I agree, Your Honor. Right? Yes. So, you couldn't fire him from his faculty position without giving him a full hearing? I agree with that, yes. Okay. So, you couldn't reduce his status from like full professor to assistant professor without giving him a hearing, right? That is, that is correct. I think he is entitled to that for his tenured professor position. He has a legitimate expectation of continuing in that position. How about if you said you're no longer going to teach these classes? You're restricted from teaching certain classes. Would he have a right to a hearing? No, he would not. Why not? Because that is the type of administrative decision that presidents and provosts are called to make every single day. Pardon me. It happens all the time, and there would be a procedural quagmire of hearings every time. What if they said, well, we're not going to let you teach X classes because you engaged in some shady scholarship? Then, Your Honor, I think that implicates the disciplinary provisions that entitle a faculty member to process, because that's misconduct. That is misconduct for which they would get a due process hearing. But the existence of the process does not create a substantive right in an administrative position per se. A substantive right is based on his status as a tenured faculty member? Yes. And, I'm sorry. So, taking now, taking up Judge Callahan's question, why isn't his assignment as manager of a fairly significant federal grant nothing more than just part of his tenured faculty sort of status? I think there are a couple of answers to that, Your Honor. First of all is the faculty manual itself, which draws a clear distinction, or at least appears to and attempts to, between tenure-type positions and administrative positions. And it lists some of those administrative positions, including directors. And so, there is no tenure. The university is not intending to convey anything like a tenure right or a forecast termination right for those administrative-type positions. Secondly, those are, one of the distinctions between the Peacock case and this case, for example, is that at least Professor Peacock had a deal with the university. He had a direct appointment from the University of Arizona to himself, giving him a one-year contract. In a federal grant situation, I submit that that's quite different, because the grant is between the university and the granting agency. In this case, the United States Department of Agriculture. There is no assignment of any duties whatsoever by the university to Dr. Lewis. He assumed those responsibilities, and he's put in the record what a lot of those duties were. But they are not assigned by the university. But again, that's quite a feather in his cap to be the manager of such a large grant. Certainly it is. We don't deny that this was the largest grant in the history of Washington State University, which I think helps prove the point that it's President Floyd's duty and right to protect it. And when it was jeopardized, not by misconduct by Dr. Lewis, but by leadership style and by scientific direction, that is the very kind of thing a president needs to have the freedom and flexibility to decide. We need a different person in this role administering our grant. And that's fundamentally different. Grants are part of how universities fund themselves, correct? Yes. But aren't also tenured professors encouraged to go out and find grants? Yes, I believe that's correct, Your Honor. So in a little bit. Especially public universities that are particularly strapped for funds. Well, I mean, and that's something that generally I think when people, you know, because that helps the university, you know, the FISC in terms of because those grants are used to pay the tenured professors, right? Correct. As opposed to, say, the tuition. Right. So there is a little bit, there's a little bit of bleed over there. I mean, because universities are, you know, on the one hand, if you go out and get grants, that would be looked upon favorably by the professor, by the president and the provost. But by the same token, the grants have a relationship with the university, not the professor doesn't sign on the line, right? Well, that's right. And another manual that hasn't been referred to yet, but it's in the excerpt of record, is the Policy and Procedure Manual for the university. And it clearly states that grants belong to the university, and the university is responsible for managing and administering the grant. And I think if you couple that language with the language in the faculty manual that tries to draw that distinction between tenured type professor rights and administrative type rights, you get the picture that there's no legitimate expectation of permanent, of a permanent job in an administrative role in a grant. Well, let's say, but let's say a tenured professor seems to be in the center of the storm of more than one grant, that the grants keep going away, because whenever this person is involved in the grants, people complain about them. Does, can that bleed over to that person's position as a tenured professor? That's a good question. I'm not sure I have a good answer to that question. Certainly, Dr. Lewis was successful in obtaining several grants, and it's one of the reasons he has, you know, he has been able to maintain a higher compensation, because he's getting money from the Department of Energy that could have been coming from the Department of Agriculture. If he hadn't obtained alternate funding that maxed him out under the university's rules, would we have a different case here? I don't think so, but we don't know, Your Honor. That would be somewhat speculative, because my understanding, it's not in the record, but my understanding is that universities will then re-up the salary to compensate for that, but we don't have that kind of evidence in this record. What we do have in the record is that Dr. Lewis, in this case, received an increase in pay, and he continues to get that increased pay today. He has not suffered one dime of loss economically as a result of this change in his role. What if he had just asked for a name-clearing hearing? A name-clearing hearing, Your Honor brought that up earlier, is, that's usually implicated in a liberty right deprivation, like a, the test is usually stigma plus, some sort of stigmatizing, you know, accused of being a difficult person to work for. But it would be prospective relief under, I think, Ex parte Young, I think you could argue that, which then would have implications on the qualified immunity. It would have, yeah. If he were requesting a name-clearing hearing, which he is not, and if he were entitled to it because it was a liberty right, not a property right, I think that would be arguably a different case. But he's clearly hanging this case on an alleged property right, for which he wants a hearing to, as his brief says, determine whether Judge, or whether Professor Floyd's decision in March of 2012 was, quote, proper or improper, unquote. And I think that's, that's exactly what's not permitted by the exception provided by Ex parte Young to 11th Amendment immunity. Well, what he's, as I understand his, you know, his argument for getting around 11th Amendment immunity is that he's, he's been removed from his management position, and it's ongoing. So, all he's asking for is, is a hearing to, to remedy that. You're right, Your Honor. I think, I think a good way to look at it would be to compare the Verizon case that was cited in, in the briefs, the Maryland Verizon case, and the, the recent case that we submitted in our supplemental authorities called the Turner case. Turner was a nurse that failed the state nursing board and brought an action to have his test reevaluated or be retested. That, that court held, that is just to correct a past wrong, if it was a wrong. The Verizon case is much different. The Verizon case, the, the public utility commission at issue in that case was assessing ongoing payments that violated federal law. Verizon had to keep making these payments that were improper. So, that is an injunction against ongoing harm. I. Well, he, you know, he's claiming that he, that, that he was wrongfully removed from that position. And he's still, you know, today, he says, I'm not in that position. It's an ongoing harm. He, he, he is not in that administrative role, but he is, he continues to have his full professor rights, his tenure rights, his full. He's concerned right now, well, this case deals with the, with his role as manager. On Doe, he, there, the appellant's counsel mentions Doe v. Lawrence Livermore, and that held that reinstatement was prospective relief. But you're saying he's not claiming reinstatement here, so that that Doe is not implicated, or? Well, correct. The, the, the, the position the counsel has maintained in this case is that that would be a next step. All he wants now is a hearing on the propriety of President Floyd's decision to remove him as project director. And then, this case stands before the court now on a summary judgment ruling. There would be discovery and further proceedings in the trial court, presumably, to determine what would happen after he gets the, after he gets this hearing. And, and I, and, and I think an important question to address is, what would be, what would that hearing entail? Would it be, would it be a committee of faculty members deciding whether his leadership style should be experienced, endured, accepted by all of the other members to the grant? Or should hardwood waste be the focus of the research rather than softwood waste? And I think we realize, when we start looking at what would they be asked to decide, who's right between President Floyd and Dr. Lewis, I think we start to realize this is an, this is an academic administrative management decision of the type that a president has the right and the duty to make. And that it's not something like for-cause employment. It's not something like tenure. So, let's assume that he gets over sovereign 11th Amendment immunity. And we're into the area of qualified immunity. What's your argument there? Well, on qualified immunity, I think that, I think the discussion we've been having about Peacock illustrates what our position is on whether that right was so clearly established. It, Peacock does not seem to support the proposition that, that this idea that he would have a property right in an administrative position is so well established that, that Floyd and Bailey reasonably should have known that they were violating his rights when they made this decision. Qualified immunity is immunity from damage, immunity from suit for damages, if I'm not mistaken. Right. It doesn't bar injunctive relief. Correct. Against the individuals. Correct. So, they, they, yes, he could, he could be entitled theoretically to a hearing notwithstanding their, their qualified immunity. But they would be immune from suit for damages. Okay. So, let me, I just have one last question. Yes, sir. So, how, how do you, you know, the discussion we have with counsel over the, the manual and disciplinary procedures in the manual, the faculty manual. So, how, how do you characterize all of that? The. How do you respond to Judge Bidey's earlier questions? Yes. Thank you. It's, the, the faculty manual does establish a whole set of rules and procedures related to tenure, and it has a process and procedures section for discipline. And the, the disciplinary procedures are there if one is accused of the, one of the 20 items of misconduct that you could be guilty of that would get you either suspended, terminated, or one of those, one of the other elements of discipline that could be imposed. That is, there is a hearing provided for that. So, that one, so that the, you have an opportunity to prove that you did not do the thing that you were accused of. So, are you, are you contesting that there's, are you claiming then that there's, there's been no discipline here? Yes. There, there's no, there's no property right to which discipline can, can attach or. There. Both of those? Both of those. Because they're trying to use the process, they're trying to construct a property right from, as one court says, procedural timber. They're taking the process that is available for disciplinary misconduct and saying, that gives us a property right to be an administrator on a federal grant. And that is a leap that I don't think the court can or should make. Because many courts have said you can't construct the right out of the process. There has to be a standalone substantive right. Council cited the Hewlin case, which is the Colorado State case, and that's a good example. In their faculty manual, it reads differently. In that manual, the professors actually had a right not to be transferred without their consent. And if they were transferred without their consent, they were entitled to a hearing. Our manual says just the opposite of that. So, there can be no expectation, no legitimate expectation of a permanent appointment in an administrative role on a federal grant. And the process is provided for those faculty members accused of one of the items of misconduct that are specified. The application to the Department of Agriculture specifically lists Professor Lewis as the project director. Does that create any rights? In fact, he's listed in the contract with the Department of Agriculture. Even though the contract's not with him, it's with the university. Right. It does not establish a contract expectation between him and the university. The circumstances of that is reflected in the record that he filled out the form and he listed himself and Dr. Wolcott as the co-project directors. And the form was submitted to the federal granting agency. And it was approved. So, he clearly was given that role. And he had that role for seven months. And that's another factor I think the court can consider in terms of assessing the legitimate expectation of continued role. The Malik case is one that's cited heavily by the plaintiff in the case. And in that case, the person had a direct letter of appointment for the position. He served in the position for nine years. He received some extra compensation for that appointment. So, I think that's a very distinct case from this case where he does not have a property right. Okay. I believe my time is up. Yes. Thank you very much. Thank you very much. I'll give you one minute. Thank you. Your Honor, this is a case about faculty discipline. And it is just like the Hulin case. The Hulin case, the faculty manual, the Tenth Circuit holds. Again, another case that I think shows no qualified immunity. That the substantive restriction on administrative action was that no unfair, unreasonable, arbitrary, or capricious action. The Tenth Circuit held that is a substantive action, restriction. Here, the substantive restriction on the removal of any responsibility is what's contained in the faculty manual. And the faculty manual's substantive restrictions is that they cannot be removed except for one of the 20 reasons. So, it's all fours. Another case, the McLaren case from the Sixth Circuit, is also says they property right from an administrative position. There are only two circuit cases involving administrative positions out there. The Peacock case from the Sixth Circuit and both, we believe, stand for the proposition that if the removal of that responsibility can only be for cause, there's a property right. Finally, on the sovereign immunity issue, if this court rules that this kind of relief is barred, then there could never be a remedy for the state's deprivation of a position with, and if they prevail to provide the hearing. Thank you very much. Okay. Thank you, counsel. Thank you, counsel. Interesting case. Thank you very much. And the matter is submitted for decision at this time.
judges: Paez, Bybee, Callahan